No. 92-409

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

RUSSELL ERIC MAULDING,

       Plaintiff and Respondent,

-vs-

ROBERT HARDMAN,

       Defendant and Appellant.

APPEAL FROM:    District Court of the First Judicial District,
In and for the County of Lewis and Clark,
The Honorable Jeffrey Sherlock, Judge presiding.

COUNSEL OF RECORD:

       For Appellant:

           Joe Seifert; Gough, Shanahan, Johnson & Waterman,
           Helena, Montana

       For Respondent:

           John C. Doubek; Small, Hatch, Doubek & Pyfer,
           Helena, Montana

FILED

Filed FEB 1 1 1993

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs:  December 3, 1992

Decided:  February 11, 1993

Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from the District Court of the First Judicial District, Lewis and Clark County, the Honorable Jeffrey M. Sherlock presiding. Appellant Robert Hardman (Hardman) appeals from the denial of his Motion to Set Aside Default Judgment which was deemed denied under Rule 60(c), M.R.Civ.P., because the District Court failed to rule on it within 45 days of its filing. We set aside the default judgment and remand for a trial on the merits.

The sole issue is whether Hardman is entitled to have the default judgment set aside in favor of a trial on the merits.

In the early morning hours of September 5, 1989, Hardman, respondent Russell Maulding (Maulding), Dan Forsina, and Crickett Martin were driving in the Sieben Ranch area near Helena. Hardman was driving his mother's car. According to Hardman's testimony at the hearing on the motion, while rounding a curve the car slid off the road due to loose gravel. The car came to a stop in the ditch without hitting any obstructions. While Maulding drove, the other three pushed the car out of the ditch, scraping a fence and knocking out a post along the way. After getting out of the ditch they drove home. No one appeared injured or complained of being injured at the time, but when a highway patrolman cited Hardman around 5:00 p.m. the next day for not reporting an accident, he learned that Maulding had visited the hospital. Hardman later pled guilty to the charge of not reporting an accident and paid a fine.

On September 13, 1989, John Doubek, Maulding's attorney, sent

a letter to The Farmers Insurance Group of Companies demanding payment of Maulding's medical expenses. On September 20, James Higgins, a claims representative with Farmers, spoke with Doubek and took Hardman's statement regarding the accident. Given Hardman's version of the incident, Higgins questioned liability and denied payment at that time. According to Higgins, Dan Forsina's statement, which he took on January 3, 1990, corroborated Hardman's description of the incident, and he conveyed this to Doubek that day.

The only documents presented to Higgins to substantiate the claimed injury were the emergency room record, which indicated only that Maulding was to rest his back, and a copy of a prescription. He received no other documents substantiating Maulding's claim. Nor did he receive a copy of the Montana Highway Patrol report from Doubek as he expected. Higgins also tried to contact Doubek regarding the case, but Doubek did not return his calls. He had no further contact with Doubek on this matter until Doubek sent a letter in May 1992 requesting payment of the judgment.

Maulding filed suit against Hardman on May 19, 1991, alleging a much different version of the accident than given by Hardman. Maulding alleged that Hardman was under the influence of alcohol, driving carelessly and recklessly and at excessive speed, and that they went over an embankment resulting in serious bodily injury to Maulding. The complaint was served on Hardman on May 1, 1991. Because Hardman was convinced that nothing had happened, he put the documents in a drawer, took no action, and told no one of them.

3

On June 24, Doubek requested that the clerk enter Hardman's default for failing to answer or otherwise appear. On November 8, 1991, the District Court entered default judgment on the issue of liability with damages to be determined later upon the proper showing. The court held a hearing on damages on March 17, 1992, and on March 19 entered judgment in the amount of $81,306.31. On May 19, Doubek requested that the clerk issue an execution writ against Hardman. On the previous day Higgins received a letter from Doubek informing him of the proceedings and offering to settle the matter for $75,000 if paid immediately.

The insurer responded by providing counsel for Hardman, who moved to set aside the default judgment on May 22. The court set a hearing on the motion for July 16, 1992. At the hearing, Doubek raised the issue of whether the hearing was timely, citing Rule 60(c), M.R.Civ.P., which in conjunction with Rules 59(d) and (g) requires the court to rule on the motion within 45 days of filing or it is deemed denied and the court loses jurisdiction to decide the matter. The court took that issue under advisement and heard the testimony regarding the motion to set aside the default judgment. The judge required the parties to brief the timeliness issue.

After reading Maulding's brief, Hardman conceded that the District Court lost jurisdiction to decide the motion on July 7, 1992, the date on which it was deemed denied. Hardman filed his Notice of Appeal on July 24, 1992.

The issue before this Court is whether Hardman is entitled to

4

have the default judgment set aside in favor of a trial on the merits.

Maulding argues that there simply is no evidence in the record upon which Hardman or this Court may rely in deciding this issue. He points out that Hardman's attorney did not present any affidavits in support of his motion. However, an affidavit of merit is no longer required under our Rules of Civil Procedure. Blume v. Metropolitan Life Ins. Co. (1990), 242 Mont. 465, 470, 791 P.2d 784, 787; Keller v. Hanson (1971), 157 Mont. 307, 309, 485 P.2d 705, 707; see also Rule 11 and Rule 60(b), M.R.Civ.P. In this case, Hardman's brief in support of his motion set forth the facts and the evidence he intended to show at the hearing on the motion. That is all that was required at that point.

Maulding next argues that because the District Court lost jurisdiction to entertain the motion, the evidence presented at the hearing is not part of the record and may not be cited by Hardman or relied on by this Court. Under Rule 60(c), M.R.Civ.P., the motion was deemed denied because the 45-day time limit had expired. Therefore, the District Court lost jurisdiction to entertain the motion. In re the Marriage of McKinnon (1992), 251 Mont. 347, 350, 825 P.2d 551, 553; In re the Marriage of Miller (1989), 238 Mont. 108, 112, 776 P.2d 1218, 1220.

However, it is within this Court's power under § 3-2-204, MCA, to consider any trial court proceedings that affect the parties' substantial rights, and we may for good cause remand this case for further proceedings. United Farm Agency v. Blome (1982), 198 Mont.

5

435, 438, 646 P.2d 1205, 1207. See also Cabalceta v. Standard Fruit Co. (11th Cir. 1989), 883 F.2d 1553, 1555 (in determining whether to exercise its inherent equitable power to supplement the record, appellate court should evaluate all factors, issues, and circumstances including whether accepting the material into the record would establish beyond a doubt the proper resolution of the pending issue and whether remand would be contrary to the interests of justice and judicial economy); and Turk v. United States (8th Cir. 1970), 429 F.2d 1327, 1329 (in the interest of justice the appellate court may order record enlarged in order to review testimony in transcript of preliminary hearing).

In this case, Maulding had full opportunity to prepare for the hearing, to cross-examine Hardman's witnesses, and to present his own evidence. There is no claim of an evidentiary error at the proceeding, and we see none in the transcript. Further, that evidence was necessary for Hardman to support his motion. More importantly, that evidence is necessary for this Court to make an informed decision on this matter. Therefore, in the interest of justice and judicial economy, this Court will consider the evidence presented at the July 16 hearing. To remand this case to the District Court for a second hearing on the motion would be nonsensical.

We now turn to Hardman's motion to set aside the default judgment. That motion is governed by Rule 60(b), M.R.Civ.P. As a general rule, cases are to be tried on the merits and judgments by default are not favored. Lords v. Newman (1984), 212 Mont. 359,

6

363, 688 P.2d 290, 293; Little Horn State Bank v. Real Bird (1979), 183 Mont. 208, 210, 598 P.2d 1109, 1110. Where the motion is made and "supported by a showing that leaves responsible minds in doubt, courts tend to resolve [those] doubts in favor of the motion, since courts favor a trial on the issues over a default judgment." Twenty-Seventh Street, Inc. v. Johnson (1986), 220 Mont. 469, 471, 716 P.2d 210, 211. Furthermore, if the District Court had denied the motion, rather than allowing it to be deemed denied, we would only be required to find a slight abuse of discretion in order to reverse the denial. Twenty-Seventh Street, Inc., 716 P.2d at 210.

However, a party seeking to set aside a default judgment must show both a good cause for doing so under Rule 60(b) and the existence of a meritorious defense. First Nat'l Bank of Cut Bank v. Springs (1987), 225 Mont. 62, 67, 731 P.2d 332, 335. We will discuss the good cause requirement shortly. As for a meritorious defense, Hardman testified at the hearing that the car simply slid off the road due to loose gravel and that no one was injured, and Higgins testified that the statement he took from Dan Forsina, a non-party, corroborated Hardman's version of the accident. Although the merits are to be finally decided at trial, Hardman has met his burden at this point.

Turning now to the justification under Rule 60(b), Hardman specifically cited subsections (1), (3), and (6) of that rule which provide:

> **Rule 60(b). Mistakes - inadvertence - excusable neglect - newly discovered evidence - fraud, etc.** On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final

7

judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; . . . (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; . . . (6) any other reason justifying relief from the operation of the judgment.

Rule 60(b) further provides that "[t]he motion shall be made within a reasonable time, and for reasons (1), (2), and (3) when a defendant has been personally served, . . . not more than 60 days after the judgment, order or proceeding was entered . . .."

Maulding cites Libby Rod & Gun Club v. Moraski (D.C. Mont. 1981) 519 F.Supp. 643, 647, where the court said, "[I]t is generally held that if a party seeks relief under any other subsection of Rule 60(b), it cannot also claim relief under 60(b)(6)" to support his argument that Hardman is precluded from claiming relief under subsection (6). And because relief under subsections (1) and (3) is time barred, he argues, Hardman is not entitled to any relief at all under Rule 60(b). However, the above quote from Libby Rod & Gun Club is not a full or fair statement of the law as this Court views it. We stated our interpretation in Springs:

> Wright and Miller cite several federal cases construing Federal Rule 60(b), which is almost identical to the Montana Rule, and state:
>
> > These cases certainly seemed to establish that clause (6) and the first five clauses are mutually exclusive and that relief cannot be had under clause (6) if it would have been available under the earlier clauses. This reading seems required also by the language of the rule.
>
> We agree with Wright and Miller's interpretation that relief cannot be obtained under Rule 60(b)(6),

8

> M.R.Civ.P., if that relief is available under Rule 60(b)(1) to (5), M.R.Civ.P.

731 P.2d at 334 (citation omitted).

A party is precluded from relief under subsection (6) when the facts or circumstances would bring the case under one of the first five subsections. In that instance, the party is not entitled to relief under subsection (6) based on the same facts or circumstances. Here, however, the fact that Hardman requested relief under subsections (1) and (3) and also under subsection (6) is not fatal. Our recent opinion in Koch v. Billings School Dist. No. 2 (Mont. 1992), 833 P.2d 181, 49 St.Rep. 517, where we said that the plaintiff should have chosen between subsection (5) and (6) because they are mutually exclusive, illustrates this. The plaintiff's failure to make this choice did not prevent the District Court or this Court from determining which subsection was proper. We conclude that in this case Hardman's motion should have been based on subsection (6), and we will analyze it under that subsection alone.

A motion under subsection (6) must be "made within a reasonable time." Rule 60(b), M.R.Civ.P. In this case, Higgins received a letter from Doubek 60 days after entry of judgment informing him of the judgment, requesting payment, and offering to settle the case for $75,000 if paid immediately. We note that the timing of this letter prevented Hardman from claiming relief under the first three subsections of Rule 60(b) due to the 60-day requirement. The insurance company hired an attorney who filed the motion and supporting brief four days later. The motion was made

9

within a reasonable time and with due diligence under these circumstances.

We conclude that Hardman is entitled to relief under Rule 60(b)(6) for two reasons. The first reason is the manner in which Doubek handled this case. The second reason is the manner in which damages were established and awarded.

This Court said in In re Marriage of Castor (1991), 249 Mont. 495, 500, 817 P.2d 665, 668, "Generally, relief is afforded under subsection (6) of Rule 60(b) in extraordinary situations when circumstances go beyond those covered by the first five subsections or when a party in whose favor judgment was entered has acted improperly." In this case Doubek initially made a demand on the insurance company a week after the accident and requested a $75 payment a week after that. However, the only documents he sent the insurance adjuster were a copy of an emergency room report and a copy of a prescription. These documents did not give a history of the injury or any other information. Although Higgins requested a copy of the highway patrol report, Doubek did not send one or indicate why he could not. Nor did Doubek provide any further documentation to substantiate this claim. Further, he failed to return Higgins' telephone calls regarding this matter. He then sought payment from the insurance company once he had obtained a judgment although he did not inform Higgins of any of the proceedings. We realize that as a general rule, Doubek was not required to inform the insurance company of the proceedings. However, he clearly knew of the insurance company's interest in

10

this lawsuit and proceeded at all times with an eye toward collecting from the insurance company once he obtained a judgment for Maulding. We have previously recognized that prejudice resulting to third parties is to be considered in a Rule 60(b) motion. See Ring v. Hoselton (1982), 197 Mont. 414, 643 P.2d 1165; John J. Ming, Inc. v. District Court (1970), 155 Mont. 84, 466 P.2d 907.

We are also mindful of Rule 3.3 of the Rules of Professional Conduct and our decision in Madson v. Petrie Tractor & Equipment Co. (1938), 106 Mont. 382, 77 P.2d 1038. Rule 3.3 requires a lawyer in ex parte proceedings to inform the court of all material facts known by the lawyer whether or not they are adverse. In Madson we vacated a default judgment partly because the plaintiff's attorney did not speak up at a hearing and correct defendant's attorney who stated there had been no service of process on his clients. Although plaintiff's attorney knew that the defendant had been served because he had received the sheriff's return of service, he waited until he moved for entry of default to acknowledge it.

In the present case, Doubek was aware that an insurance policy covered the claim, and he was informed by Higgins that Dan Forsina's statement corroborated Hardman's version of the accident. We believe Doubek should have informed the District Court of these facts.

We now turn to the manner in which the damages were established and awarded in this case. We first look at the award

11

of punitive damages. At the close of the hearing, the District Court awarded $25,000 for punitive damages. This award is based on an allegation in the complaint that stated, "Plaintiff is uncertain as to whether defendant was operating his vehicle while under the influence of alcohol but, upon information and belief, alleges that said defendant had been drinking prior to driving his vehicle."

"[N]o plaintiff is ever entitled to exemplary damages as a matter of right, regardless of the situation or the sufficiency of the facts." Davis v. Sheriff (1988), 234 Mont. 126, 133, 762 P.2d 221, 226. Section 27-1-221(5), MCA, requires that all elements of a claim for punitive damages be proven by clear and convincing evidence, and § 27-1-221(7)(b), MCA, requires the judge to "clearly state his reasons for making the award in findings of fact and conclusions of law, demonstrating consideration of each of [nine enumerated factors]." The only evidence presented here is an unsubstantiated claim in the complaint. As to the second requirement, the only reasons stated consist of a statement in the Judgment prepared by Doubek that "the evidence showed that the damages sustained by the Plaintiff were for personal injury caused by Defendant Hardman's operation of a motor vehicle while Defendant Hardman was intoxicated from using alcohol." As we said above, there was no evidence. Further, this statement does not satisfy the requirements of § 27-1-221(7)(b), MCA. See Ward v. Vibrasonic Laboratories, Inc. (1989), 236 Mont. 314, 769 P.2d 1229 (district court erred by not making findings pursuant to § 27-1-221, MCA).

We next look at the way the medical evidence was presented in

12

order to establish damages. Doubek was allowed to give an unqualified expert medical opinion regarding Hardman's condition and prognosis for recovery. The District Court should not have accepted this testimony because, on these matters, it should depend on qualified expert testimony. See Rules 701 and 702, M.R.Evid.; Shahrokhfar v. State Farm Mut. Auto. Ins. Co. (1981), 194 Mont. 76, 634 P.2d 653; Hill v. Squibb & Sons, E.R. (1979), 181 Mont. 199, 592 P.2d 1383. We conclude that this hearing was conducted as a matter of form over substance and that justice would not be served by requiring Hardman or his insurer to answer for damages established in this manner.

Lastly, Maulding argues that he would be prejudiced if the default judgment were vacated. However, there is no indication in the record that any of the witnesses are unavailable or that Maulding will be unable to produce documentation of the accident and any treatment he underwent. Furthermore, any prejudice that might arise is attributable to Maulding. The incident giving rise to this lawsuit occurred on September 5, 1989. Although Doubek made demands on the insurance company a week later, he failed to substantiate the claim or to return Higgins' calls regarding this matter. He then waited for a year and a half to file his complaint and another 40 days after that to serve Hardman. Then he waited nearly two months before requesting that Hardman's default be entered. In January 1992 the court had to prompt him to request a hearing on damages. This hearing was finally held and the court granted judgment on March 17, 1992. Doubek then waited for two

13

more months to pass before requesting an execution be issued and before contacting Higgins. Any prejudice that might result from delay is attributable only to Maulding.

Based on the foregoing, we vacate the default judgment and remand to the District Court for a trial on the merits.

John Conway Harrison
_____
Justice

We concur:

J. A. Turnage
_____
Chief Justice

William E. Hunt

R. C. McDonough
_____
Justices

14

Justice Karla M. Gray, dissenting.

I respectfully dissent from the opinion of the majority.

The majority opinion strongly implies, without quite saying in so many words, that respondent Maulding's counsel engaged in "sharp practices" in his handling of this case. I do not disagree. It is my view, however, that in its concern over counsel's actions and its determination to right a wrong, the majority fails to do an appropriate and precise Rule 60(b)(6), M.R.Civ.P., analysis. The result is a further clouding of a Rule already so murky as to be of little guidance to trial courts and counsel. For this reason, I cannot join in the majority opinion.

In my opinion, an appropriate Rule 60(b)(6) analysis supports setting aside the entry of default judgment on damages by the District Court. It does not allow the setting aside of the earlier default judgment on liability against appellant Hardman.

The critical difference lies in the fact that the challenge to the judgment on liability is grounded on actions of both Hardman himself and Maulding's counsel which bring it squarely within subsections (1) and (3) of the Rule. The 60-day limitation for motions brought pursuant to those subsections expired on or about January 8, 1992--60 days after the default judgment on liability was entered November 8, 1991. The challenge to the default judgment on damages, on the other hand, is a legitimate "any other reason" motion pursuant to Rule 60(b)(6), premised as it is on significant irregularities at the hearing on damages. Therefore,

15

that motion need not have been made within 60 days subsequent to the entry of default judgment on damages on March 19, 1992.

This analysis comports with the majority's correct statement that a "party is precluded from relief under subsection (6) when the facts or circumstances would bring the case under one of the first five subsections." Here, motions under subsections (1) and (3) were premised on events relating to the entry of judgment on liability; thus, they were not timely made due to the fact that more than 60 days had elapsed from the time of the liability judgment to the date the motions were made.

The subsection (6) motion, however, was based on **different** facts and circumstances--those surrounding the hearing on damages and the default judgment entered thereon. These facts and circumstances do not fall within one of the other subsections of the Rule; thus, Hardman is not precluded from relief under subsection (6). This portion of the motion--timely under the "reasonable time" limitation for Rule 60(b)(6) motions--properly can and should be granted.

In addition, the majority's reliance on dicta from In re Marriage of Castor (1991), 249 Mont. 495, 817 P.2d 665, will haunt this Court and Rule 60(b) practice for a long time to come. In Castor, we stated correctly that relief is afforded under subsection (6) of Rule 60(b) "in extraordinary situations when circumstances go beyond those covered by the first five subsections . . . ." Unfortunately, we went on to say--both needlessly, under the facts of Castor, and erroneously, in my view--that relief was

16

also available under subsection (6) "when a party in whose favor judgment was entered has acted improperly." Castor, 817 P.2d at 668. That portion of our statement had no applicability to the case before us; nor, indeed, was it supported by the cases we cited therein.

It is my view that the "when a party in whose favor judgment was entered has acted improperly" criterion for Rule 60(b)(6) applicability is entirely inappropriate. Such considerations clearly come within subsection (3)'s "fraud . . . , misrepresentation, or other misconduct of an adverse party" language. As such, motions on that basis would be untimely unless brought within 60 days of the judgment. By erroneously including that language within the applicability of subsection (6) of the Rule in Castor, we departed from the fundamental requirement that subsection (6) relief is not available when the facts or circumstances would bring the case under one of the first five subsections and from our appropriate reliance on Wright and Miller. That fundamental requirement will be impossible for us to apply in the future so long as we refuse to say in a straightforward manner that the quoted Castor language was erroneous dicta. Having joined in the Castor opinion, I am willing to admit my error; I wish that the majority would see fit to do the same in order that the salutary purposes of Rule 60(b) can continue to be met.

Finally, the majority appears to "believe" that Maulding's counsel violated Rule 3.3 of the Rules of Professional Conduct. If the majority is sincere in this belief, it appears to me that the

17

Canons of Judicial Ethics may require it to refer the matter to the Commission on Practice. Absent such a referral, I question whether statements about violations of the Rules of Professional Conduct have an appropriate place in our decisions.

I would reverse only the denial of Hardman's Rule 60(b)(6) motion and remand for further proceedings on damages. While this result might not be entirely "fair" to Hardman's insurer, it would preserve the integrity of Rule 60(b) and provide appropriate and necessary guidance to practitioners and trial courts.

Justice